Cancio Pérez, Plaintiff and Appellant, *v.* José Claudio, Defendant and Appellee; South Porto Rico Sugar Co. of P. R., Intervener and Appellee.

No. 6916. Argued March 31, 1935.—Decided May 29, 1935.

*Leopoldo Tormes García* for appellant. *F. Manuel Toro* for intervener-appellee.

Mr. Justice Córdova Dávila delivered the opinion of the court.

On March 12, 1930, José Claudio and South P. R. Sugar Co. entered into a contract entitled "Private Contract of Purchase and Sale of Cane." Under the terms of the contract, the planter (*colono*) agreed to plant and cultivate, for the grinding seasons from 1931 to 1935 inclusive, a certain number of acres (*cuerdas*) of sugar cane. By other stipulations, Claudio in addition sold to the intervener South P. R. Sugar Co. all the cane to be raised on those plantations during the crop-years from 1931 to 1935. All expenses of planting, cultivation, and harvesting were to be for the account of Claudio, and those of manufacture for the account of the factory. The intervener agreed to pay to Claudio periodically, as the cane should be processed, certain sums which were to be determined according to the degree of sucrose contained in the cane and the average price of sugar in the New York market. Out of the sums so payable to Claudio, the intervener was authorized to retain whatever portion thereof should be required to cover any amounts of principal and interest owing to it by the planter as sums due or becoming due each season.

The sixth paragraph of the contract reads as follows:

"Should the planter need funds for attending properly to the planting and cultivation of the said cane, the Central may supply to him, by way of advance, for account of the respective value and price of the cane and under such terms as may be agreed, but without any obligation to do so, the precise sums required; and the instrument evidencing such advance will form an integral part of the within contract."

Clause "K" of the said contract provides that in the event it should be impossible for the Central to grind the cane of the planter at the proper time, he may grind the same wherever he may deem best, it being stipulated that the cane so ground "will not be understood to be included in the present sale, unless the Central should have made any

advances or loans to the planter," in which case the net proceeds of the said cane will remain at the disposal of the former "as far as it may be necessary" to fully cover said advances or loans. The signers of this instrument, designated as one of purchase and sale of cane, agreed that the contract set forth therein should have legal effect in accordance with the provisions of the Act regarding contracts for agricultural advances and grinding of cane, approved March 10, 1910. The said instrument was presented in the registry of agricultural contracts where it was endorsed on May 12, 1930, as follows: "The contract for agricultural advances contained in the foregoing instrument has been recorded. . ."

The intervener advanced moneys to Claudio for the financing of the 1931 crop, and at the end of the grinding season of that year and upon the account being liquidated, the planter was found to be indebted to the factory in the sum of $1,252.55. The planter acknowledged this debt in a promissory note, which was secured by a mortgage on certain personal property. Similarly, the intervener advanced moneys for the 1932 crop, at the end of which Claudio was found to be owing the total sum of $1,316.20, which included the indebtedness carried over from the preceding year.

On January 31, 1933, Cancio Pérez brought a suit against José Claudio to recover the sum of $2,068, together with interest thereon. He obtained an order to secure the effectiveness of the judgment and attached all right, title, action, and interest which the defendant Claudio might have in the cane existing and ready to be harvested on the properties covered by the contract of purchase and sale of cane to which we have made reference. The plaintiff was appointed custodian and manager of the cane, and the latter was ground in the factory of the South P. R. Sugar Co. The sugar produced was sold and yielded a net total sum of $1,324.89, after making certain deductions to which the parties have agreed. The intervener South P. R. Sugar Co. then intervened in the action, answering the complaint filed by Cancio

Pérez and claiming to be entitled to preference with respect to the proceeds of the attached cane for the amount of its credit against the defendant amounting to $1,316.20. Judgment was rendered adjudging Claudio to pay to the plaintiff the sum claimed and holding that the intervener's credit for agricultural advances was entitled to priority over that of the plaintiff with regard to the proceeds of the cane attached.

From that part of the judgment which acknowledges priority in favor of the credit of the intervener, the plaintiff has appealed and has assigned three errors, which may be reduced to two, namely: That the court erred in holding that the contract of March 12, 1930, between the planter and the intervener was one for agricultural advances and not of purchase and sale; and in deciding that the said contract prejudiced the plaintiff, notwithstanding it had not been made to appear of record in the registry that any sum had been advanced to Claudio for financing the cane.

■ The position taken by the appellant in claiming that the agreement entered into by the parties has the character of a contract of purchase and sale of cane and not for agricultural advances and grinding, would not seem to favor him. The appellant knows that the sale of the cane necessarily implied for Claudio the loss of the ownership thereof in 1930, long before the commencement of the present action, and on the assumption that a contract of sale is involved it is clear that the attachment levied on February 6, 1933, could not affect rights previously acquired by the purchaser of the said cane, South P. R. Sugar Co. However, we agree with the lower court that the contract was one for advances and grinding of cane rather than one of purchase and sale. The cane was to remain in the possession of the planter, who paid all the expenses incidental to the raising of the crop and assumed all the risks until the said cane were converted into sugar. The factory did not bind itself to pay the value of the cane, but to liquidate the sugar produced on the basis

of the New York market price. Logically, it must be inferred that the intention of the parties was not to sell the cane, but to contract for the grinding thereof. This is specially emphasized by clause "K" of the contract to which we have already referred, which provides, in short, that such cane as could not be ground in the Central would be understood to be excluded from the agreement, unless the said Central should have furnished advances to the planter, in which case the proceeds of such cane would be held at the disposal of the factory for the purpose of attending to the payment of such advances.

Although the contract deals primarily with the grinding of cane, it also comprises advances for the financing thereof which must be paid from the proceeds of the cane. It is stipulated in the sixth paragraph that if the planter should need funds for attending to the planting and cultivation of the cane, the Central may furnish the same by way of advance chargeable to the value and price of the cane, and the planter authorizes the Central to retain out of the proceeds of the sale of the sugar any sums that may be necessary to cover all advances made. By the tenth paragraph the parties agree that the contract is to have legal effect in accordance with the Act regarding contracts for agricultural advances and grinding of cane, approved March 10, 1910. The form used by the contracting parties in setting forth their stipulations is not the most desirable for drawing a contract for agricultural advances and grinding of cane; but we think that substantially a contract of that kind is involved, and such seems to have been the understanding of the registrar in recording the agreement.

It is true that the said advances, although furnished in accordance with the contract made, were not entered of record in the registry, and it is also true that the maximum amount to be advanced for crop financing purposes was not stated in the said contract; but it must be borne in mind

that this case involves an attaching creditor who can not destroy, by virtue of his attachment, any rights acquired by the intervener at the time such attachment was levied. An attaching creditor is not a third person (*tercero*) within the meaning of the law, and acquires no greater right to the property attached than had the debtor, whom he succeeds. *The Commercial Credit Co.* v. *Soto,* 41 P.R.R. 406; *La Sociedad Española de Auxilio Mutuo y Beneficencia* v. *Rossy,* 17 P.R.R. 77. The rights of an attaching creditor with respect to the property attached must be determined in accordance with the condition of the title at the time of the levy. Such a creditor, who did not contract for his credit on the basis of the cane and the proceeds thereof, can not, by his attachment, affect rights previously acquired by the South P. R. Sugar Co. upon the said property. There is no controversy as to the question of the advances. The evidence introduced by the intervener upon this point has not been contradicted. Besides, Claudio's debt to the South P. R. Sugar Co. was acknowledged in an authentic instrument subscribed before a notary on September 21, 1931, or one year and four months before the present action was instituted.

The appellant, however, argues that, even though a contract for advances should be involved, the intervener held no lien on the cane attached in 1933, as it was not shown that it had advanced any moneys for the crop of that year but only for the 1931 crop. In other words, the appellant maintains the theory that any advances furnished under a crop loan contract enjoy preference only with respect to the fruits of the crops for which such advances were made. We do not agree with this contention. The contrary doctrine has been established by this court in the case of *Gómez* v. *Bravo et al.,* 34 P.R.R. 141, where it was held that a crop loan credit owned by the defendant, American Colonial Bank, constituted a preferred lien on the fruits notwithstanding the agricultural advances made had been invested in crops preceding the one involved in the suit.

The appellant invokes section 1826 of the Civil Code (1930 ed.), which provides that when two or more creditors claim preference with regard to certain personal property, credits for advances for seeds shall be preferred over others with regard to the fruits of the crop for which they were incurred.

It is indisputable that the preference granted by sections 1822 and 1826 of the said code is limited to the fruits which were the object of the advances. But the crop lien granted by the Act of March 10, 1910, is not subject to such a limitation. That statute was enacted precisely for the purpose of facilitating the loans to farmers and, in furtherance of that purpose, it tends to establish greater guarantees in favor of the lender. If the Civil Code, by its section 1822, had provided the necessary guarantees, there would have been no necessity for enacting a special law on the subject. The preference granted by the said section is so limited, that it could not reasonably be offered as sufficient in itself to encourage the investment of capital for agricultural purposes. If this preference had continued to be limited to the fruits which are the object of the advances, the creditor would run the risk of having the value of the crop for which the advances were used rendered insufficient to cover them by reason of drought, storms, or some other cause, in which case the creditor would not have the guarantee of the next crop, even though he might be willing to finance the latter, since, according to section 1822, the new crop would only answer preferentially for the advances made exclusively for its production.

The Act of March 10, 1910, came to offer the investor precisely those guarantees which did not exist in the legislation theretofore in force and, by its section 4, as amended, it expressly provides that as regards the products which are the object of the lien, the crop loan credit shall have preference during the years stipulated in the contract, and in all

cases, until the creditor is fully reimbursed the amount of his credit.

In view of the provisions of the special law on the subject and of our decison in the case of *Gómez* v. *Bravo et al., supra,* we reach the conclusion that the crop lien in this case is not limited to the advances made for the 1933 crop, but that it also secures those made for the 1931 crop, especially, regard being had for the fact that the contract comprises the crop-years from 1931 to 1935 inclusive.

The judgment appealed from must be affirmed.